Please step up and identify yourselves. Good morning, Your Honor. Elliot Zinger, on behalf of Kaplan Joseph Severino. Good morning, Your Honor. Creed Tucker, on behalf of Appalachia. Could you say your names again, because it doesn't seem like you're the guys that we're on. Oh, it's Elliot Zinger, Z-I-N-G-E-R. Okay. Creed, C-R-E-E-D. Tucker, T-U-C-K-E-R. Okay. You know our general rules. We're somewhat liberal in that if a lot of questions are asked, we usually give you some more time. But that doesn't mean go forever. Is there a set time frame? Usually the 15-15 and a couple. Including the rebuttal. All right. We'll try to speed it up and be brief. Thank you, Your Honor. May I proceed? You may. Thank you. Good morning, Your Honor. First of all, I would like to first start this argument by citing the issue of res judicata and citing specifically that the res judicata doctrine is not an absolute doctrine, and I think we have to take that into perspective in this case. As the court in Pagentini v. Ford Motor Company indicated, res judicata should not be technically applied if an inequitable or unfair result would occur. It shouldn't be applied if it's fundamentally unfair to apply it and really should only be applied as fairness and justice require. I think some of that gets lost in all of the legal arguments surrounding this case. And I think we have to go back to the time this case occurred to really take a look at what happened. When this case occurred, meaning the voluntary dismissal was entered, there was no Hudson. There was no Quintus. The bar, and this is reflected in the Ryan case, the bar, the trial bar, regarded a voluntary dismissal, did not regard the voluntary dismissal in the context of personal injury lawsuits as something that would involve claim splitting. I think that's very clear, and Ryan makes that clear. In fact, it indicates on page 332 that it talks about the case law in Illinois that defines claim splitting to also include a situation in which plaintiff takes a voluntary dismissal and the remaining claims of inaction after other claims have gone to judgment was not even proposed until Ryan. And at that time, it was interpreted in a completely different way by the plaintiff's bar, and it was not clarified that it applied to personal injury lawsuits until the Hudson case came about, which was after this voluntary dismissal occurred in this case. And I think on an equitable basis, I would ask the court to keep that timeframe and that reality in mind because on an equitable basis, I think it's very important. At the time this voluntary dismissal was entered, no one contemplated, no one, not the plaintiff, not the defendant, and not the court, did not contemplate this sort of a harsh result in this case where an entire case would be dismissed of a personal injury plaintiff. And I think that this reflects the intention of the parties when the voluntary dismissal was entered, which was clearly to refile the case and not to be prejudiced and not to have a bar to refiling the case. In this case, obviously- Let me just ask you, you know, cutting through some of this, you've refiled the negligence in a Woelfel and Wanton, right? Right. Well, you'll agree that the Woelfel and Wanton didn't have a prayer. I mean, that's outside of the box. Absolutely agree. But the other one is I view it, and I'm almost saying I don't think the Supreme Court agrees with themselves. I think they're split in the middle because you had a dissent in, what is it, Hudson. Yeah. And to be honest with you, I think the dissent makes more sense than the majority opinion. So I'm simply saying I think the two that dissented, it appears, are more knowledgeable in procedural law. And the thing that I'm having, the major problem is Rhine, I don't think, was properly decided. But Rule 273, an involuntary dismissal, you have an absolute right to refile. And a final judgment has to be on the merits. In neither Rhine nor Hudson was there a final judgment on the merits. Tell me more on that. Or go ahead and say how your case fits into what I'm thinking. Well, what you're thinking, I think, was expressed by Judge Ward in the trial court. He had great difficulty in interpreting Hudson as to make it a bar to this case. He did interpret it to have it as a legal bar to this case because Hudson did come out. And after that, the cases we cited, Quintus and Green, came out. But I think you're perfectly correct in your analysis that Justice Gilbride's analysis of Hudson, it made more sense and certainly was completely more reflective of what every lawyer and every judge in this county thought was the law at the time after reading Rhine. I mean, every case would have been dismissed on that basis in between Rhine and Hudson if that was really thought of as the law. So Hudson came down, and I think most judges have a problem with it. I'm not here to say that they're wrong. I mean, I can't say the Supreme Court is wrong, but it certainly is an extremely, extremely harsh and unexpected result. And all I'm saying is that when you take a look at it, and this is also an evolving area of the law, I think the courts, if you review the Quintus decision and the Green decision, are looking for ways to loosen the standard and the rigidity of the decision in Hudson, and especially in cases that occurred before Hudson even came out. I mean, you're talking about everyone thought that was the law, and that was what all the bar thought was the law, and all of a sudden the case is dismissed on res judicata. I mean, if people come in there and agree, and the docket sheet is entered that the case is going to be refiled and costs will be paid when it's refiled, and no one says anything, and the judge enters the order and the docket sheet reflects that, I mean, obviously all the people involved, the plaintiff defense and the court, all thought the case was going to be refiled and refiled without a problem. I mean, if that was not the case, I think there would have been a clear objection. I mean, if the defendant could have won his lawsuit by objecting and saying, no, I don't think the case should be refiled, I don't think the cost should be paid now because this case will never go forward based on a bar of res judicata, that would have happened. We are not allowed to overrule the Supreme Court either. So how do we address the fact that there was at least one final judgment in terms of the adjudication of the merits in regard to the Ammal Control Act, and then the Supreme Court's language about claim splitting? How do we resolve this case? Well, I think in several ways. First of all, this is a little bit different than Hudson, not on the counts, et cetera, and the dismissal, but it's a little bit different because of this appeal issue and the confusion that came about surrounding this appeal. When the appeal was filed, we took the position that the appeal should be dismissed, and the defendant took the position, or Appolite took the position, that the appeal should not be dismissed because all of the orders were now final since there was a voluntary dismissal, and the case, for whatever reason, and I'm not on the appellate court either, but I got the order, and it said that there's no jurisdiction for the appeal, so it's not final. Did it actually say that we had determined that it was a non-final order? No, it did not, but really that was the only issue that was raised. I mean, in our motion, that's all we said. We said that the appeal should be dismissed. I suspect that was from a different division because the motions are generally pending before another division before we get the case. Right. But, I mean, we assumed that certainly there was not going to be a bar, and we assumed that their position would be that all of these orders were suddenly final, and then later in their subsequent briefs that the one order is final as to the statute of limitations or as to the Animal Control Act. The other ones are not final, so everyone is confused. The rationale that Judge Ward employed, as I understand it, did not go along the same lines as the issue that was before the appellate court in the motion stage. In other words, the defendant was appealing from the denial of a motion to dismiss at that time, which obviously was a non-final order. Explain this to me. The rationale that Judge Ward used dealt with the finality of the dismissal of the willful, but not the willful, but the Animal Control Act count, and that became final by reason of Hudson and Roy. Is that what he decided? That's apparently what he decided. But I think if we obtained the order from the appellate court and assumed that the orders were not final, it wouldn't have been that big of a stretch to believe that for whatever reason. And I think even more importantly, we have to look at the cases that came up after Hudson because I think those deal with the equitable issues, and again, especially in light of cases that were filed or voluntary dismissals that were entered before Hudson even occurred, we have issues about allowing and contemplating the leave to refile a case, which goes to express reservation by the court, which I don't think there's any difference between this case and Quintus, which was reversed. In fact, this case is stronger. You brought Quintus to the attention of the trial court, did you not? I do not believe that Quintus was even decided at the time. Wasn't there a motion for rehearing or reconsideration? But based upon Piagentini, which basically talked about the different parts of a count, and that I think is completely different because when different parts of a count are dismissed or stricken, obviously res judicata would not apply, and that's what Piagentini decided. But Judge Ward was so concerned that when he saw this case of Piagentini, which obviously is distinguishable from Hudson and our case, he allowed us leave to file new briefs based upon it, which just shows the importance of the evolution of the law here and the evolution I believe which is going to occur as to the exceptions to this harsh rule of Hudson. Based on the court's view of Hudson and based on fairness, I mean, if people reserved the right to refile a case in accordance with what every lawyer thought and every judge thought was the law before that, and they reserved the right to refile a case to go out of the way to bar it, and especially, again, when this was done before Hudson was even contemplated, people wouldn't have these ideas to refile a case and be allowed to refile a case and be allowed to pay costs in the future when we refile it instead of by statute doing it when we entered the voluntary dismissal. We wouldn't do that if we didn't contemplate refiling the case. And to say that no one contemplated refiling the case in light of the fact that Hudson didn't even exist, it just doesn't make any sense to me. There's a theory going back even before, and I don't know if you read this, where they speak as to the fairness, distinguishing when a plaintiff can or cannot appeal a voluntary dismissal and when a defendant can and who is prejudiced. Do you feel, and I guess what that kind of pushes the theory that is your case a new case when you refile or is this just a continuation of the prior case? In other words, I would feel that a continuation is not prejudicial, whereas a new case, unfortunately, your second one was a new case, would be prejudicial. So my theory is that one is res judicata, one is not. Well, I realize the courts have held very sternly that a refiled case is a new case. But that also falls into the area of what is really happening in the case. I mean, what is really happening? You're taking a case, you're voluntarily dismissing, everyone knows it's going to be refiled, or it wouldn't have been voluntarily dismissed in the first place, especially before you even knew that this sort of result would happen. But did you have a specific reason for dismissing it? I wasn't the lawyer at the time. He panicked at the last minute because he didn't feel he was properly represented and voluntarily dismissed it so he could obtain new counsel to better reflect his injuries. But he went to his lawyer who knew all about this stuff. I mean, he's a well-versed lawyer on the law and, frankly, he said this wasn't the law that I knew. I didn't know this to be the law whatsoever. I've been practicing X number of years, this is not the law. And it wasn't, I don't think, at the time. It certainly wasn't in the consciousness of every lawyer in Illinois, except for possibly the people who decided Ryan. But even then, it wasn't decided later. I think it would have been brought up long ago. So he decided to take a voluntary dismissal based on his representation. And the issue of claim splitting, I mean, I realize the court addresses the issue of claims splitting in Hudson, but really, was this really the intent of the parties? I mean, I think obviously not. A person goes with a lawsuit, they have an absolute right in the mind of the bar and the mind of the statute to take a voluntary dismissal and start for whatever reason, sickness, wrong lawyer, whatever reason, voluntary dismissal and start again. They're not contemplating claim splitting. I mean, I think that's the furthest thing from reality. I mean, it's just not in the contemplation of what's going on. And that's part of the equitable issue, that it has to be taken in the context of what's really going on in the real world, not under a magnifying glass to use res judicata as a sword to knock a plaintiff with a good case out of the box, because technically speaking, it might fall under the res judicata doctrine and be barred under the Hudson for claim splitting. And I think most courts have very, very grave difficulties with this Hudson decision. And since it is a new decision and since it is evolving, and we look at Quintus and we look at Green, and they're saying if there's a reservation, if there's an express reservation or even an implied reservation, that the court wants this to refile and contemplate refiling, we're going to allow that, because that's what's really going on. This issue of claim splitting is not what's really going on. Everyone knows that's what's not really going on. Now, maybe in Ryan it was going on, but that's a completely different set of facts. I mean, they were just doing lawyer tricks to avoid discovery and board of judgment. I mean, that's different. But in your basic personal injury case, we have two counts and one gets dismissed, and especially before Hudson, that was not what was going on. So I think equitable fairness has to be injected into the case, and that's what we're asking this court to do. And we're asking this court to do it especially in light of the reservation of the right to refile. It's very clear. It's on a certified docket sheet, which is no different than Quintus. It's in the order. I mean, people wouldn't have put that in the order to refile it at such and such a time with costs being, why would you go to that trouble to put that in the order that costs would be repaid in the future by the plaintiff when he refiled, or similar language, if you weren't contemplating refiling? It just doesn't make any sense. So we have an extremely harsh result, and we have the obvious intention of the parties and the time frame, which all boils down to what's the equitable result here. That's all I have. Thank you. Sure. Mr. Tucker? Thank you, Your Honor. If I may begin. You know what I'm having trouble with. I don't feel there's a determination based on the merits when you allow this to happen under res judicata, because I don't really feel in this situation it can be res judicata. And I'm not so sure Hudson really says that it is. I think they refer to a case, Downing, and I don't think Downing says what they say it says. But with that in mind, go right ahead. Your Honor, we made our motion to dismiss based upon the Supreme Court ruling in the Hudson case. And to say that the Hudson case was new, I think even the Supreme Court said, this is not new, this is an unremarkable exercise in following the Rhine decision. For me personally, the Rhine decision flew under the radar, and I wasn't aware of it. Apparently a lot of people weren't. And when the Hudson decision came down, a lot of people became aware of it and acted upon what the Supreme Court has ruled. So that argument was there. The people in the Hudson case made that argument at the trial court level, made that argument at the appellate court level, made that argument at the Supreme Court level before it was finally published. So that argument was being made by some people years early based on the Rhine decision. The fact that the Supreme Court ruled the way it did, that's the way the court ruled, and we are operating based on what the Supreme Court's rule is in Hudson. Our case here is squarely the same fact pattern as the Hudson case. There are kind of three different areas I'd like to address. You don't think it's closer to Quintus? No, I don't. And I will address that as well. Was there an interlocutory appeal in the Hudson case where the appellate court found a want of jurisdiction? I'm sorry? Was there an interlocutory appeal, as there was in this case, where the appellate court determined there was a want or lack of jurisdiction? No, Your Honor, there wasn't. And I'd like to address that issue first. As you may recall, in the original action, we filed a motion to dismiss the Animal Control Act count and a motion to strike the negligence count. An order was entered granting the dismissal with prejudice of the Animal Control Act count, striking the negligence count with leave to amend. An amended complaint was filed purporting to amend the negligence count. There wasn't an attempt to replete the Animal Control Act count because it was clearly the intent of the court that that was a final order. Later we moved to, after the plaintiff filed the amended complaint, we moved to dismiss the amended complaint because we contended that the new allegations created a different claim and it was beyond the statute of limitations. The final court rejected that and found there was a relation there. Correct. And then the plaintiff voluntarily dismissed. When we filed an appeal in, call it Severino 1, we did not appeal the grant of the dismissal of the Animal Control Act. We were the beneficiary of that decision. We filed an appeal of the denial of our motion to dismiss. And what we argued was that in a situation like this where there's a final order over there, the dismissal of the Animal Control Act count, that that final order became final and appealable upon the voluntary dismissal of the case. And because there's a final and appealable order in this matter,  that pulled along those previously non-final rulings and made them final and the appellate court disagreed. The appellate court ruled, motion to dismiss is granted. So we said there was no final order. No final order for the denial of our motion to dismiss. That was not a final order. What relief were you seeking when you filed the appeal of the first motion? What relief were you seeking from the appellate court in your appeal when you appealed the granting of your motion? We were seeking that the appellate court rule that the trial court was incorrect in the denial of our motion to dismiss based on statute of limitations. And the appellate court found that we didn't have jurisdiction over that because that ruling was not a final order. Well, since there was a voluntary dismissal at that point, wasn't that an acknowledgment by your side that there's still a live action, there's still a case here, the fact that you are concerned about that, isn't that an acknowledgment that there's a case here? Otherwise, why bother? We were concerned with, frankly, the issue of res judicata coming back at if there was a refiling done, there could be an issue regarding whether or not we have a right. So you anticipated refiling? We anticipated the possibility of a refiling. The appellant in the appellant's brief talked about that the grant of the motion to dismiss the appeal, that first appeal, has some necessary implications to it. And the necessary implication that the appellant asserts is that the appellate court in that case found that the dismissal of the Animal Control Act was not a final order. And that cannot be the necessary implication of the appellate court's ruling because if that is the necessary implication, the implication of that is that the appellate court ruled erroneously. And that can't be the necessary implication. It's the same argument that was made in the dissent regarding Ryan, that the appellate court made a bad decision. I'm just trying to logically go through this because I keep coming back and I see nowhere. . . This isn't really claim splitting the same as what they were trying to get rid of, that they, the Supreme Court. This is an example of a legitimate case where they went too far with Wolfel and Watten, but they still had a negligence count. And my belief is that that is not a final disposition on the merits. Well, the final disposition on the merits was of the Animal Control Act. Right. No, I agree with you there. And I'm just saying when they refile, they have an absolute right. And then when they dispose to this, they're saying it's pulled in because it could have been dealt with. But when I listen to him, I'm saying there's a perfect example where maybe it wasn't legitimately pulled in, and therefore these cases almost have to be determined on their fact basis rather than on a case that was determined on its own facts, Hudson. Except this mirrors what happened in the Hudson case where one count was dismissed on the merits and that became a final order. And when their voluntary dismissal took place, that was a final unappealable order. And because there was a final judgment on the merits on one count, when the newly filed action was filed, there was that final judgment on the merits, there was an identity of the cause of action from the first case, and there was an identity of parties. And the Hudson court said, if we have those three things, that's it. That's what the Supreme Court ruled. The law of the case from that appellate court decision in Severino 1 was not that the dismissal of the Animal Control Act was somehow not final. The law of the case was that non-final orders don't become final simply because there's a final order over there when there's a voluntary dismissal. That doesn't make non-final orders into final orders. So we have a situation where we've got... And that's what Hudson is saying. I'm just saying. I just have difficulty in my mind seeing how here it's not and five minutes later it is. Well, and in this particular case, Judge, you know, we do have the claim splitting in the sense that the Wolfville 1 count... Well, I agree. The Wolfville 1, that's what I said to him, that's out of the box. I'd like to address briefly the issue of this exception. When you've got a situation like we have that fits within Hudson with the rule against claim splitting barring or allowing for a defense to be raised if res judicata to a refiled action, there are exceptions to the rule against claim splitting. And there are a couple of exceptions that have come into play in this case. One has to do with acquiescence, and the other has to do with the court expressly reserving the right of the plaintiff to refile. If either one of those takes place, that exception allows the plaintiff to do the refiling. And what I want to bring to the Court's attention is that in the briefs now, the appellant is essentially hanging their hat on the express reservation exception. And that express reservation exception was never raised in the trial court. But also we have that the case, Gallagher's case, wasn't in effect the law until either halfway through this case or after this case. I'm sorry, is that the Quintus case? Yeah. I go by judges because I can't remember the names of the cases. And if you will indulge me, Your Honor, I'll get there in just a moment. I just want to finish my thought on that this express reservation of the court is now being argued in a couple of different places. One, that in the voluntary dismissal order there was language costs to be paid upon refiling. And then in the so-called docket sheet, there was some language with leave to refile. Neither of those concepts were addressed at the trial court level, much less this filing account that wasn't alleged before. And I want to put this in context because this costs to be paid upon refiling language was mentioned in the SIR response that was filed when the court asked us to brief the Pagentini issue. But in context, Pagentini was talking about acquiescence. And the issue was that in that case, when the new suit was filed, the second complaint was filed, the defendant appeared and answered and filed affirmative defenses that didn't include res judicata. They went through virtually the whole life of the case was discovery. I think three and a half years into it and a few months before trial, they filed a motion for summary judgment. And the Pagentini court said, you've acquiesced. That's acquiescence to the refiling because you participated in it all this time. Here, as we pointed out to the trial court, we did not acquiesce to the refiling. Our response to the refiling was to file the motion to dismiss. When you anticipated refiling on the appeal, isn't that kind of acquiescence? I don't know if we got a live case. Well, we weren't sure which way it was going to go. So we felt that we should err on the side of caution and go ahead. And if the ruling is that the court doesn't have jurisdiction, then so be it. So we argued the acquiescence issue, and the trial court agreed with us. Now we're faced with this express reservation issue, which was not raised below, which creates prejudice for us because we didn't have a chance to brief that issue below. The trial court didn't have an opportunity to rule on that issue below. There was no chance to address this whole Wolfenwanten situation. Regarding the Quintus situation, there was no chance there to, for example, depose the clerk of the court, Dorothy Brown, as to the import or lack of import of that so-called docketing statement. As we pointed out in our brief, there's a disclaimer on that document, that it's not an official record of the court or the clerk, and may not be represented as an official court record. Isn't there a certified copy that's attached to the reply brief here? There is a certified copy. The certified copy is a certification, it appears to be, and we haven't had a chance to ask Dorothy Brown about this, who certified it, but it appears to be a certified printout of that thing, which we can all look at on the Internet, which has that disclaimer on it. I think the court... You have coupled with that the trial court's order that impliedly indicates the reservation, that the costs were to be paid upon refiling. That is at best implied. I said implied, yes. And the express reservation exception calls for expressly reserving. And I might note that that cost to be paid upon refiling is often done, and it's not done in anticipation of a new suit being filed. Often when it's if a new suit's being filed, then you're going to have to pay costs. We, generally speaking, cut the plaintiff attorney some slack and say they want to voluntarily dismiss, we're not going to make them pay costs. But if they refile, then they've got to do it. If they refile, then they've got to do it. That's not an express reservation by the court of some right that would fall within the exception to the express reservation rule. I might also ask the court if the court's going to take judicial notice, that first, the court does need to take judicial notice that that so-called docket sheet is not an official court record. And second of all, the case law talking about docket sheets, I don't think it's talking about the context of this computer printout in Cook County. You look at, for example, it used to be anyway, with the municipal division the judges would write on the outside of the file jacket. They'd make notations of things. So the judge is writing stuff down. If there's not an order inside, you look at that. And that's the notation that was made by the judge that showed the intent of what was going on. Of course, that's part of what really happened. Or in other counties, smaller counties, the judge may say, you know, turn to the clerk and say, and make a note of that, that I said this is the last briefing schedule. And it's noted in there somewhere, even if it's not in the judge's handwriting. But here, this is information that's keyed in by somebody remotely, based on some codes or something. I'm not really sure, but I can tell you, and you can take judicial notice of this, that it's often not accurate. So I don't think that the Quintus decision, really when you scrutinize it more closely, should stand here. I also might note that the argument that Quintus wasn't around when this case was being briefed is also, again, the published decision wasn't around. But the lawyers in that case made the argument. The so-called docket sheet was there for the argument to be made. Nobody ever made an argument below about the express reservation by the court. There was acquiescence was argued, and that was it. So we have a real problem with bringing that at this point in time when it wasn't brought below. So in summary, the appellate court in Severino 1 never ruled that there was no final order below. Rather, the appellate court found that final orders, non-final orders, don't magically become final. So we did have a final order, which calls into play this whole res judicata situation. There was no express reservation exception argued below. The acquiescence exception was argued, and we did not acquiesce to the refiling. And I guess the will-for-one aspect has already been addressed. Thank you. A couple of things, Your Honor. I think even in counsel's argument, we see what the contemplation of the parties was at the time of this voluntary dismissal. Counsel admitted that he wasn't even aware that the Rhine decision would have an effect on this voluntary dismissal issue in his argument before Your Honors. That just coincides with my argument that the entire bar contemplated the voluntary dismissal would be filed and would be proper and the case could be refiled. I think that's clear. And counsel was the attorney who was present or was the attorney of record during this entire proceeding. So that admission goes directly to my argument. Secondly, I think common sense would take it that, again, if counsel did not believe the case was going to be refiled, that plaintiff had the right to refile, I don't think he would go to the extent of filing an appeal in the appellate court and go to all of that expense with the briefs and all of that if he didn't think this case was going to be refiled. And I think he even stated before Your Honors that he anticipated refiling. Why would he anticipate refiling? Because every lawyer in Cook County anticipates refiling in that situation, and every judge at that point in history contemplated refiling without a problem. So counsel was just one among many. And to say that he wasn't now after the fact I think is just rewriting history. Second of all, counsel's position for an equitable argument is inconsistent because he stated numerous times in the brief that all orders were final. And that's what Hudson says. Now he's stating that the Animal Control Act was final, but the statute of limitations order was non-final. So his position is certainly inconsistent earlier on to later on in both of those aspects, in both the refiling and in the effect of whatever the appellate court did in this case and whatever his position was as to the finality of the orders. And finally, as to the Quintus, I don't see what the difference between Quintus in this case is at all. In fact, this case is stronger than Quintus. In Quintus they specifically say that the docket entry is not inconsistent with the judge's order. So to say that this certified copy is incorrect, and it's not incorrect, the court can take judicial notice of the certified copy of the docket sheet and compare it to what's in the order. They work together, and Quintus makes this perfectly logical and perfectly the thing to do on page 9 of the decision where it says there's no conflict between the docket entry. That would require us as a court to determine which is controlling. They work hand-in-hand. So to say by some, you know, this is just a computer-generated thing and it's not, it has nothing to do with this case, it's probably wrong like all the other ones are wrong, I don't think that's reality. I think we have to look at this case both in the reality and in the time frame of when this happened, in the context of what this happened, in the context would reflect the intention of all the lawyers and the court when this happened, and there's really only one logical and just conclusion, and most specifically equitable conclusion, and that's that everyone contemplated a right to refile at the time this voluntary dismissal was entered, and there was acquiescence, and the court's entry in the docket entry reflected that acquiescence. Yes, Quintus wasn't around, the decision wasn't around for us to argue it, but the court specifically talked below about the acquiescence and the entry and whether it reflected acquiescence, and to jump and say that this has no relation to what the court did, I think is also folly. I think we have an evolving area of the law that obviously addresses a very harsh, to say it at best, a very harsh result, an unanticipated result, and an evolving area that's expanding the exceptions here. So to say that this is inconsistent with Quintus, and Green as well, which said as a matter of right, you have a right to refile, which followed Quintus, is just not the case. There's no difference. There's no difference between this and Quintus. We have a right to refile, all the parties contemplated that, and why should it be any different? So thank you very much. Thank you. Appreciate your time. Thank you, both of you. Both your briefs and your arguments were, I call them entertaining, because I tried to throw you into a trap, but you didn't bite, so what can I do? Well, thank you very much. Thank you.